1 Fed.Appx. 521

Page 1

1 Fed.Appx. 521, 2000 WL 1946741 (C.A.7 (Ill.))
**(Cite as: 1 Fed.Appx. 521)**

C

Day v. Lincoln Ins. Agency, Inc.
C.A.7 (Ill.),2001.
This case was not selected for publication in the Federal Reporter.NONPRECEDENTIAL DISPOSITIONTo be cited only in accordance with Fed.R.App.P. 32.1.
United States Court of Appeals,Seventh Circuit.
Michael B. DAY, Plaintiff-Appellant,
v.
LINCOLN INSURANCE AGENCY, INC., Defendant-Appellee.
**No. 00-2627.**

Submitted Dec. 19, 2000.[FN*]

FN* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a).
Decided Jan. 10, 2001.

Employee appealed after the United States District Court for the Northern District of Illinois, Milton I. Shadur, J., dismissed his Title VII and Age Discrimination in Employment Act (ADEA) claims as time-barred. The Court of Appeals held that employee was not entitled to equitable tolling of 90-day period following issuance of EEOC right-to-sue letter during which he was required to file suit.

Affirmed.
West Headnotes
**[1] Federal Courts 170B ☞776**

170B Federal Courts
　170BVIII Courts of Appeals
　　170BVIII(K) Scope, Standards, and Extent
　　　170BVIII(K)1 In General
　　　　170Bk776 k. Trial De Novo. Most Cited Cases

**Federal Courts 170B ☞797**

170B Federal Courts
　170BVIII Courts of Appeals
　　170BVIII(K) Scope, Standards, and Extent
　　　170BVIII(K)3 Presumptions
　　　　170Bk797 k. Dismissal. Most Cited Cases
Court of Appeals reviews de novo a district court's decision to dismiss a claim on a statute of limitations defense, accepting as true all of plaintiff's factual allegations and the reasonable inferences drawn from them.

**[2] Civil Rights 78 ☞1505(6)**

78 Civil Rights
　78IV Remedies Under Federal Employment Discrimination Statutes
　　78k1503 Administrative Agencies and Proceedings
　　　78k1505 Time for Proceedings; Limitations
　　　　78k1505(6) k. Tolling. Most Cited Cases
　　(Formerly 78k342)
The timely filing of an Equal Employment Opportunity Commission (EEOC) charge is not a jurisdictional prerequisite to filing a federal employment discrimination lawsuit, but rather, is more akin to a statute of limitations, and is subject to equitable tolling under appropriate circumstances.

**[3] Limitation of Actions 241 ☞104.5**

241 Limitation of Actions
　241II Computation of Period of Limitation
　　241II(G) Pendency of Legal Proceedings, Injunction, Stay, or War
　　　241k104.5 k. Suspension or Stay in General; Equitable Tolling. Most Cited Cases
Equitable tolling of a statute of limitations applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 Fed.Appx. 521
1 Fed.Appx. 521, 2000 WL 1946741 (C.A.7 (Ill.))
**(Cite as: 1 Fed.Appx. 521)**

determine information essential to bringing a complaint, and is premised on the plaintiff's excusable neglect.

**[4] Civil Rights 78 ☞1530**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1530 k. Time for Proceedings; Limitations. Most Cited Cases
    (Formerly 78k373)
Plaintiff who listed a prior mailing address on discrimination charge he filed with Equal Employment Opportunity Commission (EEOC), rather than post office box to which his mail was being forwarded pursuant to change-of-address forwarding form he had submitted nine months earlier, and who did not notify EEOC when forwarding form expired after 12 months, was at fault for his failure to obtain actual receipt of right-to-sue letter issued by EEOC, and thus was not entitled to equitable tolling of 90-day period following issuance of letter during which he was required to file employment discrimination suit, which expired shortly after 12-month forwarding period expired. Civil Rights Act of 1964, § 706(f)(1), as amended, 42 U.S.C.A. § 2000e-5(f)(1).

**[5] Civil Rights 78 ☞1530**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1530 k. Time for Proceedings; Limitations. Most Cited Cases
    (Formerly 78k373)
While general rule is that 90-day period following issuance of right-to-sue letter by Equal Employment Opportunity Commission (EEOC) during which plaintiff must bring employment discrimination suit begins to run upon plaintiff's actual receipt of the notice, actual notice rule does not apply when plaintiffs fail to receive notice through their own fault. Civil Rights Act of 1964, § 706(f)(1), as amended, 42 U.S.C.A. § 2000e-5(f)(1).

*522 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 00 C 419. Milton I. Shadur, Judge.

Before COFFEY, MANION, DIANE P. WOOD, Circuit Judges.

ORDER

**1 Michael Day appeals from the district court's dismissal of his employment discrimination suit brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.,* and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The district court found that Day's claims were time-barred because he failed to bring suit within ninety days of the Equal Employment Opportunity Commission's notice of right-to-sue letter, as required by 42 U.S.C. § 2000e-5(f)(1). We affirm.

On February 15, 1999, Michael Day filed a charge with the EEOC alleging discrimination on the basis of age, race, and sex. In his EEOC charge, he listed his mailing address as 1514 North Elston in Chicago, but his actual mailing address at that time was a post office box. Day does not say why he did not provide the EEOC with his new address when he filed his charge, but claims that he had submitted a postal change-of-address form some nine months earlier, in May 1998, and was relying on the post office to forward any EEOC correspondence from the old address to the new. On March 10, 1999, the EEOC sent a right-to-sue letter to the North Elston address that Day had listed in his charge; that letter was returned to the EEOC as undeliverable. Several months later, in November 1999, Day contacted the EEOC to request a right-to-sue letter; this time he gave the EEOC the post office box address. On November 2, 1999 the EEOC wrote Day at his post office box address, informing him that the right-to-sue letter had been sent to him by certified mail to the address it had on file, but that the Postal Service had returned it as undeliverable. Attached to this correspondence was a copy of the March 1999 right-to-sue letter. Day filed his federal complaint on February 1, 2000-within ninety days of actually receiving a copy of the EEOC letter but almost a year after the EEOC had sent its determination to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the only address it had on file. The district court granted Lincoln's motion to dismiss the complaint as time-barred because Day failed to file within ninety days of the March 1999 letter.

[1] Day now appeals, claiming that the district court erred in declining to apply equitable tolling because: (1) he took reasonable measures to ensure that he received any EEOC correspondence by filling out a change-of-address form with the post office; and (2) post office error caused him to miss the ninety-day deadline. We *523 review de novo a district court's decision to dismiss a claim on a statute of limitations defense, accepting as true all of plaintiff's factual allegations and the reasonable inferences drawn from them. *Perry v. Sullivan,* 207 F.3d 379, 382 (7th Cir.2000).

[2][3][4] The timely filing of an EEOC charge is " not a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations and subject to ... equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ. of Health Sciences,* 167 F.3d 1170, 1174 (7th Cir.1999) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). "Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint," *Ashafa v. City of Chicago,* 146 F.3d 459, 463 (7th Cir.1998) (internal quotations and citation omitted), and is premised on the plaintiff's excusable neglect. *See, e.g., Hamilton v. Komatsu Dresser Indus., Inc.,* 964 F.2d 600, 605 (7th Cir.1992). Thus, the critical issue is when the 90-day limit began to run and whether, based on Day's conduct and the circumstances within his control, equitable tolling is warranted.

**2 [5] Although we have held that the ninety days begin to run upon plaintiff's "actual receipt" of the notice, we have also recognized that when plaintiffs fail to receive notice through their own fault, the " actual-notice" rule does not apply. *See Houston v. Sidley & Austin,* 185 F.3d 837, 839 (7th Cir.1999); *Jones v. Madison Service Corp.,* 744 F.2d 1309, 1313 (7th Cir.1984). Lincoln relies on *St. Louis v. Alverno College,* 744 F.2d 1314, 1317 (7th Cir.1984), which holds that the ninety-day time limit begins on the date that the letter was delivered to the most recent address provided to the EEOC, even though the plaintiff did not receive actual notice until several months later because he failed to inform the EEOC of a change of address. *Alverno,* however, does not squarely cover the circumstances here. In contrast to Day, the plaintiff in *Alverno* waited six years before informing the EEOC of his change of address, and he left no forwarding information to ensure that his mail would reach him. Here, Day took affirmative measures to ensure that his mail was forwarded, and it is at least arguable that the forwarding instruction created the equivalent of an accurate address for him, as long as that instruction was in effect.[FN1]

> FN1. The parties do not address whether the postal service will forward certified mail. The United States Postal Service Mail Delivery Manual suggests that certified letters like the one initially sent by the EEOC to Day are treated like regular first-class mail for forwarding purposes, and thus Day arguably would have been justified in assuming that the letter would reach him. *See* United States Postal Service Domestic Mail Manual Section F010.2.4, *available at http://pe.usps.gov.* We need not reach this question, however, because we find that Day was at fault for other reasons.

Yet even under his own theory, Day should have notified the EEOC by the end of May 1999, when the forwarding order expired. Day acknowledges that such requests are valid for only twelve months. Had Day contacted the EEOC before May 1999 to inform the agency of his new address and to determine the status of his charge, he would have learned that the initial right-to-sue letter had been issued in March. He still would have had time to file his lawsuit within the ninety-day period, which did not expire until June 1999. Day's delay in informing the EEOC of his correct address caused the delay in his actual receipt of the right-to-sue letter, *524 and he thus cannot claim the benefit of equitable tolling.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 Fed.Appx. 521                                                                    Page 4
1 Fed.Appx. 521, 2000 WL 1946741 (C.A.7 (Ill.))
**(Cite as: 1 Fed.Appx. 521)**

Affirmed.

C.A.7 (Ill.),2001.
Day v. Lincoln Ins. Agency, Inc.
1 Fed.Appx. 521, 2000 WL 1946741 (C.A.7 (Ill.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 F.3d 205                                                                                                    Page 1

124 F.3d 205, 1997 WL 374865 (C.A.7 (Ill.))
**(Cite as: 124 F.3d 205)**

H
Trask v. Foster
C.A.7(Ill.),1997.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a " Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA7 Rule 53 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Seventh Circuit.
Lois TRASK, Plaintiff-Appellant.
v.
James FOSTER, ILLINOIS DEPARTMENT OF REHABILITATION SERVICES, Delores SHOWALTER, Defendants-Appellees..
Decided June 24, 1997.
Submitted June 23, 1997 [FN*]

> FN* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. *See* Fed.R.App.P.34(a); Cir.R. 34(f).

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. Division.

Before COFFEY, FLAUM, and KANNE, C.J.

*ORDER*
HOLDERMAN.
*1 Lois Trask sued the defendants for violating rights secured to her by Title VII, 42 U.S.C. § 2000e-5 *et seq.* The district court dismissed the case because Trask did not file suit within 90-days of receiving her right-to-sue letter as required by § 2000e-5(f)(1). We affirm.

Trask filed various charges against the defendants with the EEOC. On March 19, 1992, the Department of Justice sent, by certified mail, a right-to-sue letter to Trask at the address she had provided during the charging process. The letter was returned unclaimed because Trask no longer resided at the address she had provided. On July 30, 1992, the Department reissued the letter to the same address. This time, Trask received it and filed suit on September 1, 1992.[FN1]

> FN1. Trask is before this court for the second time. *Trask v. Foster,* No. 94-2984, 1995 WL 730822 (7th Cir. Dec. 8, 1995) (unpublished order). During her first appeal, we vacated part of the district court's judgment and remanded with instructions to hold a hearing on the issues of whether the Department actually sent a right-to-sue letter on March 19.1992 and, if it did, whether Trask was at fault for failing to claim it. *Id.* at ---3.

The district court found that Trask was at fault for the failed delivery because she did not notify the EEOC when she moved from the address she had provided them. Therefore. relying on *St. Louis v. Alverno College,* 744 F.2d 1314 (7th Cir.1984), the court held that the 90-day limitation period began to run upon the first, unsuccessful delivery. Because Trask filed suit outside the limitations period, the court dismissed her suit.

Trask challenges the evidentiary basis for the district court's decision. She claims that the court did not consider her testimony that she had been diligent in pursuing her rights with the EEOC. However, review of this claim is impossible because she failed to include a transcript of the district court hearing in the appellate record. Therefore, this claim is dismissed. *See LaFotlette v. Savage,* 63 F.3d 540, 544-45 (7th Cir.1995) (dismissing appeal because absence of relevant transcripts precluded meaningful appellate review) *Woods v. Thieret,* 5 F.3d 244. 245 (7th Cir.1993) (same).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 F.3d 205, 1997 WL 374865 (C.A.7 (Ill.))
**(Cite as: 124 F.3d 205)**

Trask then claims that dismissal of her suit was too severe a punishment for her transgression. She asserts two bases for this claim: first, she did not actually receive the first right-to-sue letter; and second, she promptly filed suit when she did actually receive the letter. Essentially, she argues that it is unfair to bar her suit. But the EEOC regulations are clear: "The person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change of address ... so that he or she can be located when necessary during the Commission's consideration of the charge." 29 C.F.R § 1601.7(b). Here, as in *Alverno College,* Task's failure to inform the EEOC of her new address was not an event beyond her control making it unfair to hold her accountable to the 90-day limitation period. *See Alverno College,* 744 F.2d at 1317. "Accordingly, ... the ninety-day limit began running on the date the notice was delivered to the most recent address plaintiff provided the EEOC." *Id.* Trask did not file suit within 90 days of that date and. therefore, the district court did not err in dismissing the case.

AFFIRMED.

C.A.7(Ill.),1997.
Trask v. Foster
124 F.3d 205, 1997 WL 374865 (C.A.7 (Ill.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

74 F.3d 1242 Page 1

74 F.3d 1242, 1996 WL 19262 (C.A.7 (Ill.))
**(Cite as: 74 F.3d 1242)**

H
Simmons v. Illinois Dept. of Mental Health and Developmental Disabilities
C.A.7 (Ill.),1996.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA7 Rule 53 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Seventh Circuit.
Martha SIMMONS, Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Defendant-Appellee.
No. 95-1547.

Argued Dec. 5, 1995.
Decided Jan. 18, 1996.

Appeal from the United States District Court, for the Northern District of Illinois, Eastern Division, No. 94 C 1383; William T. Hart, Judge.
N.D.Ill., 1995 WL 41404.

AFFIRMED.

Before WOOD, Jr., COFFEY and MANION, Circuit Judges.

*ORDER*

I. BACKGROUND

*1 On March 30, 1992, plaintiff-appellant Martha Simmons filed a charge of discrimination ("Charge I") with the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment by her employer, the Illinois Department of Mental Health and Developmental Disabilities (IDMHDD).

On June 9, 1993, Simmons filed a second charge ("Charge II") alleging retaliation for her filing of the earlier charge, and also alleging discrimination on the basis of a physical disability.

On September 23, 1993, Simmons requested a "right to sue" letter from the EEOC. The EEOC transmitted this request to the Department of Justice, which granted it. A letter regarding Charge I was sent by certified mail to Simmons at her most recent address, a post office box in Westmont, Illinois.[FN1] A notice was placed in that box on October 22, 1993 informing Simmons that she had received a certified letter. A second notice was placed in the same box on October 27th. By November 7, 1993, the letter was still unclaimed, and the post office returned it to the Department of Justice on that date.

Shortly thereafter, on November 17, 1993, the Justice Department issued to Simmons a right to sue letter for Charge II, and mailed it to the same post office box address. This letter was retrieved by Simmons on approximately November 27, 1993.
On or near the same date, Simmons received a notice from the Justice Department through the regular mail advising her that the letter regarding Charge I had been returned unclaimed, and that she could have this letter reissued. Though it is unclear exactly when she did so, Simmons took the necessary steps to have the letter regarding Charge I reissued, and the Department of Justice did so approximately six weeks later, on January 4, 1994.[FN2] This letter was sent, per Simmons' request, to her residence in Palos Hills, Illinois, where she retrieved it on January 22, 1994. Simmons continues to use the post office box address in Westmont, and claims that throughout these events she has checked the box "periodically," though not "regularly" at any certain interval.

Simmons filed her complaint on March 4, 1994. The complaint incorporated both charges; Charge I, alleging sex discrimination, was incorporated in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

74 F.3d 1242, 1996 WL 19262 (C.A.7 (Ill.))
**(Cite as: 74 F.3d 1242)**

Count I, and Charge II, alleging retaliation and disability discrimination, was incorporated in Counts II and III. In response, IDMHDD filed both a Rule 12(b)(1) motion to dismiss the complaint for lack of subject matter jurisdiction and a motion for summary judgment. The motion to dismiss argued that Simmons' claims were barred by the applicable statute of limitations because of her failure to file suit within 90 days of receiving the Charge I and Charge II letters.

The district court considered IDMHDD's motion to dismiss as a motion for summary judgment since timely filing a Title VII action is not a jurisdictional prerequisite. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398 (1982). The court noted that Simmons conceded that Count III should be dismissed because her suit as to Charge II was not timely; Simmons received the right to sue letter for this count on November 27, 1993, but did not bring suit until March 4, 1994. Count III was thus dismissed. Even though Count II was based on the same charge, Simmons urged that this be considered with Count I. Without deciding this issue, the court employed a fault analysis and found that the delay in obtaining the Charge I letter was due to Simmons' inaction. Under this analysis, the 90-day clock began to run when the plaintiff *could* have picked up the letter, in this case October 22, 1993. Since the claim was filed far beyond the 90-day window from that date, the remaining counts were also dismissed. This appeal followed.

## II. ANALYSIS

*2 The district court treated IDMHDD's Rule 12(b)(1) motion to dismiss as a motion for summary judgment, as allowed for Rule 12(b)(6) motions. *Fed.R.Civ.P.* 12(b). Neither party challenges this approach on appeal. Whether one considers the district court's ruling as one for dismissal or summary judgment, our review is de novo, granting all reasonable inferences in favor of the plaintiff (dismissal) or nonmoving party (summary judgment). *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994) (motion to dismiss); *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994) (summary judgment).

Title VII requires an aggrieved party to file a charge of discrimination with the EEOC before going to court. 42 U.S.C. § 2000e-5(e)(1). If the EEOC dismisses the charge, it informs the claimant by certified mail that a civil action may be brought against the employer within 90 days of receipt of the letter. 42 U.S.C. § 2000e-(f)(1). Like a statute of limitations, compliance with the 90-day time limit is not a jurisdictional prerequisite, but rather a "condition precedent" to filing suit, and is subject to equitable modification. *Perkins v. Silverstein,* 939 F.2d 463, 470 (7th Cir.1991).

The issues in this case are when the 90-day limit began to run, and whether any equitable tolling of that limit is warranted. For the analysis of such questions, this circuit has developed a three-pronged approach. *Bond v. Am.Med.Ass'n,* 764 F.Supp. 122, 124 (N.D.Ill.1991) (citing *Trinkle v. Bell Litho, Inc.,* 627 F.Supp. 764, 765 (N.D.Ill.1986)). First, in cases where the right to sue letter is mailed to the plaintiff's residence but received by someone other than the plaintiff, the 90-day period commences on the date the claimant "actually receives" the letter. *Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 585 F.2d 210, 216 (7th Cir.1978). Second, in cases where the right to sue letter is sent to plaintiff's attorney, the 90-day period begins to run when the attorney actually receives the notice. *Jones v. Madison Service Corp.,* 744 F.2d 1309, 1312 (7th Cir.1984). Finally, in cases where the plaintiff does not receive a right to sue letter for some other reason, a "fault" approach is used. This approach essentially asks whether the delay in bringing suit was the "fault" of the claimant, and is determined on a case by case basis. *Jones,* 744 F.2d at 1313.

As Simmons concedes, the first two prongs of this approach are inapplicable here. Simmons disagrees, however, with the district court's analysis under the third prong. Simmons claims that the district court wrongly applied the "fault" approach literally, and limited its review to a narrow set of circumstances which ignored her later efforts to file her case. We find no merit in these arguments. We have held that a plaintiff must take reasonable steps to ensure delivery of a right to sue letter, *St.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

74 F.3d 1242, 1996 WL 19262 (C.A.7 (Ill.))
**(Cite as: 74 F.3d 1242)**

*Louis v. Alverno College,* 744 F.2d 1314, 1317 (7th Cir.1984), and implied that this might include steps to ensure *receipt* of that letter. *Id.* We have also explained that a plaintiff should not be penalized " because of fortuitous circumstances or events beyond his or her control," *id.,* at 1316, or because of delays occurring "through no fault of [his or her] own." *Id.* at 1317. These standards can be read as literal "fault" standards, if appropriate in context; it is conceivable that a plaintiff's "fault" may even override factors involved in the first two prongs of the analysis discussed above. *See Trinkle,* 627 F.Supp. at 765 n. 1 (citing *Espinoza v. Missouri Pacific Railroad Co.,* 754 F.2d 1247, 1250 n. 3 (5th Cir.1985)).

*\*3* In this case Simmons admits she failed to provide the EEOC with an address to which the first letter should have been mailed. Though the record is not conclusive on the point, the EEOC apparently discovered the appropriate post office box address from her request for the second letter. "The law presumes delivery of a properly addressed piece of mail," *McPartlin v. Commissioner,* 653 F.2d 1185, 1191 (7th Cir.1981), and Simmons does not deny that the letter was properly sent to this address and returned unclaimed by the Postal Service. Neither does she deny that the appropriate notices regarding the waiting letter were placed in her box. Yet Simmons failed to check the box or respond to these notices over at least a 16-day period. The district judge found this interval unreasonable under the circumstances, and we do not disagree. Such a delay, especially in the absence of any other mitigating factor, is simply not a "fortuitous circumstance" or an event beyond the control of the plaintiff. Absent these exceptions, Simmons' inaction constitutes fault.

Simmons did exercise more reasonable diligence after being notified that the letter could be reissued, and the EEOC may be rightly criticized for not clearly indicating on this notification or its replacement letter that a reissuance does not necessarily affect the time remaining for legal action. Nevertheless, these subsequent actions do not create an exception to the rule that under the fault prong of the analysis, the 90-day limit begins to run on the date the initial right to sue letter was delivered to the most recent address provided by the plaintiff. *St. Louis,* 744 F.2d at 1317. Even assuming a date most favorable to the plaintiff, November 7, 1993 (the day on which the letter was finally returned), Simmons' March 4, 1994 filing is clearly outside the 90-day limitations period.

Simmons next claims that the limitations period should be extended by the amount of time required to have the right to sue letter reissued and delivered to her. The 90-day period of limitations in Title VII cases may be equitably tolled when circumstances warrant. *Jones,* 744 F.2d at 1314 (citing *Zipes,* 455 U.S. at 398). A liberal application of this doctrine is disfavored, however; it has also been reserved "only for situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Jones,* 744 F.2d at 1314 (citing *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978)).

Simmons was informed on November 27, 1993 that the Department of Justice had issued a right to sue letter for Charge I on October 20, 1993, and that this letter had been returned unclaimed. Even so, she delayed requesting a reissuance of the letter for nearly 30 additional days. Even after the letter was reissued by certified mail on January 4, 1994, Simmons again delayed claiming it until January 22, 1994. No explanation is provided for these delays. Under these circumstances, we find no good faith error or extraordinary circumstances warranting equitable tolling in this case.

*\*4* The judgment of the district court is AFFIRMED.

> FN1. The District Court found that this letter had been sent to the plaintiff "at a post office box that she had provided as her address." This address was evidently taken not from her first charge, which contained a different address, but from the second, more recent charge. There is some disagreement as to the contents of the other possible source for the address, Simmons' request for the first right to sue

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

letter. This document, however, is not contained in the record. In any event neither party directly challenges the district court's finding as it relates to issues on appeal.

FN2. The "reissued" document, apparently a mechanically-produced "form" letter, was identical to the original, unclaimed version, but bore the date January 4, 1994, not October 20, 1993. A recipient of such a letter understandably could be confused as to when the 90-day period begins to run, especially since the letter also mentions that the period begins upon the claimant's "receipt" of the letter. Under the "fault" analysis applicable here, however, this is not the case (see discussion above), and in any event the EEOC possesses no power to grant a tolling of the 90-day period. The EEOC should be faulted for such notification practices; they are misleading and may cause claimants to forfeit their right to sue.

C.A.7 (Ill.),1996.
Simmons v. Illinois Dept. of Mental Health and Developmental Disabilities
74 F.3d 1242, 1996 WL 19262 (C.A.7 (Ill.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 1

Not Reported in F.Supp.2d, 2001 WL 1035181 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Ungeran v. Commonwealth Edison
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Robert J. UNGERAN, Plaintiff,
v.
COMMONWEALTH EDISON, Defendant.
**No. 00 C 5312.**

Sept. 7, 2001.

MEMORANDUM OPINION AND ORDER
GUZMAN.
*1 Pending is Defendant Commonwealth Edison's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below this motion is granted.

BACKGROUND FACTS

Plaintiff Robert J. Ungeran filed a charge of employment discrimination with the Equal Employment Opportunity Commission on July 10, 1995 alleging that Defendant discriminated against Plaintiff based on his age and disability of manic depression. The Equal Employment Opportunity Commission dismissed the charge and issued Plaintiff a Notice of Right to Sue on May 24, 2000. The Right to Sue Letter expressly informed Plaintiff that if he did not file suit against Defendants within ninety days of the receipt of the letter he would forfeit his right to sue. On August 29, 2000, 97 days after receipt of the Right to Sue Letter, Plaintiff filed a Complaint in this Court.

In his complaint, Plaintiff alleges that he was discriminated on the basis of his age and disability, in violation of the Age Discrimination Act ("ADEA"), 29 U.S.C. § 621 et seq. and the American With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. Defendant filed this motion to dismiss on May 7, 2001.

DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir1998). However, a pro se complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *See Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir.1999). Accordingly, with these principles in mind we turn to the motion before us.

Defendant moves to dismiss the complaint as untimely under 29 U.S.C. § 626(e) and 42 U.S.C. § 12117(a). Under the ADA and the ADEA, a plaintiff is required to bring suit within 90 days of receipt of a Notice of Right to Sue from the EEOC. The 90-day period commences when a plaintiff receives "actual notice" of his right to sue. *See Houston v. Sidley & Austin,* 185 F.3d 837, 839 (7th Cir.1999) (citations omitted). Both the Seventh Circuit and this Court have applied the ninety day requirement strictly and have been "reluctant to extend the ninety day period." *Fleming v. Alco Building Products,* 820 F.Supp. 1113, 1116 (N.D.Ind.1992). A plaintiff receives such "actual notice" on the date he, or his attorney obtains physical possession of the right to sue letter. *See Jones v. Madison Service Corp.,* 744 F.2d 1309, 1312 (7th Cir.1984).

According to Plaintiff's complaint he received his Right To Sue Letter on May 24, 2000 the date it was issued by the EEOC. This date obviously puts Plaintiff's case outside the 90 day limitations period in light of the fact that Plaintiff's case was filed on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 1035181 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

August 29, 2000. However, according to Plaintiff's Response to Defendant's Motion to Dismiss, he received his Right to Sue Letter sometime between May 31, 2000 and June 3, 2000. However, the certified copy receipt mailed by the EEOC reveals that the Plaintiff's Right to Sue Letter was initially delivered to Plaintiff's residence on May 30, 2000, a second delivery attempted on June 4, 2000 and was ultimately returned by the Post Office on June 14, 2000).

*2 Under normal circumstances, when the EEOC sends a right-to-sue letter by certified mail, the 90-day limitations period presumptively begins to run on the day that plaintiff actually receives the letter. *Houston at* 185 F.3d at 839. This actual notice rule cannot be applied in Plaintiff's case in light of the fact that the certified mail was returned to the EEOC on June 14, 2000 and Plaintiff is guessing as to the precise date he received his Right to Sue letter. Plaintiff has the burden of producing facts which explain when he actually received the right to sue letter. By indicating a span of days in which Plaintiff claims he received the latter this Court is left to guess the actual date Plaintiff received his copy of his Right To Sue Letter. This statement alone is insufficient. The EEOC's letter is date stamped May 24, 2000. Plaintiff was therefore on constructive notice five days after the letter was issued. *Lody v. Sullivan,* 882 F.2d 218 (7th Cir.1989)(applying the presumption that the right to sue letter is received five days after it was issued. Because, Plaintiff did not file his complaint until August 29, 2000, the complaint is untimely being that it was filed on the 93rd day. Furthermore, Plaintiff did not serve Defendant with the original complaint during the 120 day period as required under Fed. R.Civ. P. 4(m). After filing his complaint on August 29, 2000, Plaintiff waited until March 10, 2001, 193 days to mail Defendant a Notice of Lawsuit and Request for Waiver of Service of Summons. While a generous reading is to be given to pleadings by pro se litigants, such leniency does not extend to excusing the failures by such litigants to conform to the clearly spelled out procedural requirements. *Haines v. Kerner,* 404 U.S. 519, 520-521, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972). Plaintiff's service is clearly untimely in light of the fact that Plaintiff did not even attempt to serve the complaint until 193 days had passed.

## CONCLUSION

For the foregoing reason, the motion to dismiss is granted. The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58 against Plaintiff (# 8).

N.D.Ill.,2001.
Ungeran v. Commonwealth Edison
Not Reported in F.Supp.2d, 2001 WL 1035181 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 1

Not Reported in F.Supp.2d, 2000 WL 290279 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Thomas v. United Parcel Service
N.D.Ill.,2000.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Paul THOMAS, Plaintiff,
v.
UNITED PARCEL SERVICE, Defendant.
**No. 99 C 6258.**

March 17, 2000.

*MEMORANDUM OPINION*
KOCORAS, J.
*1 This matter comes before the court on Defendant United Parcel Service's ("UPS") motion to dismiss. For the reasons set forth below, the motion to dismiss is granted.

BACKGROUND

Paul Thomas ("Thomas") is a male African-American who began working with UPS in 1989 as a loader. After working for UPS for over five years, he was promoted to the position of driver. Beginning with his promotion, Thomas claims that he was the victim of discrimination on the basis of his race and sex in that he was assigned to delivery routes that were more dangerous than those given to females and male workers who were not African-American. In June 1997, Thomas complained of the with discharge. In October 1997, Thomas filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights against UPS for employment discrimination. On June 16, 1999, the EEOC dismissed the charge and notified Thomas of his right to sue within 90 days of the receipt of the right-to-sue letter. Thomas received the letter on June 24, 1999. To be within the statutory period, Thomas had until September 22, 1999, to file suit against UPS. However, his complaint was not filed until the following day, September 23, 1999. Thomas states that his tardiness was due to his daughter's illness on September 22. Upon learning of his child's condition, Thomas claims that he telephoned the clerk of the court and was told by an unnamed person that he could file the next day without adverse consequences. UPS now moves this court to dismiss Thomas' claim on the basis of the delay pursuant to Fed.R.Civ.P. 12(b)(6).

LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992), *cert. denied,* 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992). With these principles in mind, the Court evaluates UPS's motion.

DISCUSSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1:07-cv-01086-JBM-JAG  # 10   Page 14 of 19

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 290279 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

I. Timeliness of Filing

*2 UPS argues that Thomas' claim is fatally flawed in that it was not filed within the 90-day period specified for filing suit on a claim dismissed by the EEOC. The statute, 42 U.S.C. § 2000e-5(f)(1), and the right-to-sue letter are unequivocal in stating that any suits filed after the dismissal of the EEOC charge must be filed within 90 days of the party's receipt of the EEOC letter informing the party of their right to sue. The time limit is not a flexible guideline even for pro se litigants and even a one-day delay is fatal. *Wilson v. Doctors Hospital of Hyde Park,* 909 F.Supp. 580, 581 (N.D.Ill.1996); *Brown v. City of Chicag,* No. 96 C 3078, 1998 WL 704278, at *3 (N.D.Ill. Sept. 30, 1998). Thomas admits that he filed his claim on the 91st day after receiving his right-to-sue letter. Therefore, absent a defense that would excuse his tardiness, Thomas' claim is untimely and must be dismissed.

II. Equitable Tolling

Thomas asserts that his failure to file his suit within the requisite 90 days should be excused through the doctrine of equitable tolling. The statutory period is not a jurisdictional requirement but a requirement that is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982). Equitable tolling applies when disability, irremediable lack of information, or other circumstances beyond the party's control makes it impossible for a party to file suit within the statutory period. *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996). The statutory period for filing is tolled until the party is able through the exercise of due diligence to file suit. *Id.* Equitable tolling is available as a defense in only limited circumstances. *Jones v. Madison Service Corp.,* 744 F.2d 1309, 1314 (7th Cir.1984). The claimant must have made a good faith error or been prevented in an extraordinary way from filing in time. *Id.* The doctrine will not protect a party who omits ordinary precautions. *Luckett v. Rent-ACenter, Inc.,* 53 F.3d 871, 873 (7th Cir.1995).

In this case, Thomas waited until the last possible day to file his suit and then relied on the word of an unidentified person's word that his late filing would not affect the viability of his case. Thomas bases his argument that he is entitled to this defense on a case from the Second Circuit, *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2nd Cir.1984), which involved a grant of summary judgment. Thomas claims that this case stands for the proposition that a party is entitled to equitable tolling as long as the party attests to the proffered excuse in an affidavit. However, his reliance upon this case is misplaced; in it the Second Circuit held only that the plaintiff could not create a genuine issue of material fact without filing an affidavit stating his version of the facts. *Id.* Also, the erroneous information given in *Johnson* originated with an EEOC official, who would be expected to be familiar with EEOC-related deadlines. *Id.* In the instant case, Thomas claimed to have relied on the word of an unnamed courthouse official, not someone affiliated with the EEOC. It is difficult to imagine why Thomas would have thought an unnamed individual who deals with thousands of different types of cases would know which claims could be filed a few days late. In addition, Thomas knew three months in advance when and where he needed to file his claim, yet he did not file in time. He did not take advantage, once knowing of his daughter's illness and his inability to reach the courthouse on the final day, of the many means available to him to file on time. Ordinary precautions in this case would have included seeking alternate means of filing the claim on time, such as using a messenger or having a friend or relative bring the papers to the courthouse. In short, the circumstances surrounding the filing of this claim are not the kind of extraordinary ones that rise to the level of hardship that would engage equitable tolling. Therefore, the defense is not available to Thomas and his claim fails for untimeliness.

CONCLUSION

*3 Without the proper procedural basis, Thomas' complaint does not state a claim upon which this court can give relief. Accordingly, UPS's motion to dismiss is granted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 1

Not Reported in F.Supp.2d, 1998 WL 704278 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Brown v. City of Chicago
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Russell BROWN, Plaintiff,
v.
CITY OF CHICAGO, Defendant.
**No. 96 C 3078.**

Sept. 30, 1998.

*MEMORANDUM OPINION AND ORDER*
WILLIAMS, J.
**\*1** Pro se plaintiff Russell Brown brings this complaint alleging that Defendant City of Chicago violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Defendant moves the court to enter summary judgment on its behalf under Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants defendant's motion.

*Background*

The following facts, taken from defendant's Rule 12(M) Statement and plaintiff's Rule 12(N) Statement, are undisputed. Plaintiff Russell Brown ( "Brown") was employed as a firefighter with the City of Chicago ("City") from February 19, 1980 until January 11, 1995, when he was discharged for engaging in theft and falsifying illness reports. (Def. Mem. at 6.)

On April 23, 1994, Brown was arrested for stealing two men's wallets from Lord & Taylor and on August 4, 1994, Brown was arrested for stealing men's silkwear from Carson, Pirie, Scott. (Def. Rule 12(M) stmt. ¶¶ 8-9.) On August 8, 1994, Brown pled and was found guilty of misdemeanor retail theft for both the April 23, 1994 and the August 4, 1994 incidents. (*Id.* ¶ 20.) He was sentenced to time served (August 4-9) and 30 days Electric Monitoring for each incident. *Id.*

When plaintiff failed to appear at work on August 5, 1994, his wife, Valerie, delivered a doctor's note to Brown's supervisor, which stated that plaintiff was seen and treated by Dr. Silverman. (*Id.* ¶¶ 13-14.) Brown, however, never saw Dr. Silverman. (Pl. Rule 12(N) stmt. ¶ 14.) Chief Harold West instructed Valerie to have Brown report to the Medical Division on August 8, 1994. (Def. Rule 12(M) stmt. ¶ 17.) Brown, who was in custody until August 9, 1994, did not report to the Medical Division as scheduled. *Id.* On August 9, 1994, the Medical Division started investigating Brown because he failed to show up to work on August 5, 1994, could not be reached by anyone in the Division from August 5-9, 1994, and he missed his appointment with the Division on August 8, 1994. (*Id.* ¶ 18.) Personnel Director Chief Charles Stewart drafted charges and recommended discipline for Brown. (*Id.* ¶ 19.) Brown responded to the charges by submitting a note that falsely stated that he could not be reached at home between August 5 and August 9, 1994, because he was going to and from the drug store and doctor visits. *Id.*

On August 10, 1994, the Medical Division ordered Brown to return to work on August 14, 1994. (*Id.* ¶ 23.) Brown did not return to work on August 14, 1994, but instead called in and explained his intent to go on medical lay-up. (*Id.* ¶ 24.) The fire department requires a firefighter who goes on medical "lay-up" to submit an explanation of his or her injury (including reason for lay up, approximate duration, attending physician, etc.), which must be submitted within eight hours of the 0800 hours roll call on the day of work missed. (*Id.* ¶ 25.) On August 14, Valerie, delivered Brown's lay-up slip, which stated that Brown could not work for three days. (*Id.* ¶ 26.) The department filed charges against Brown for failing to provide the requisite information concerning the nature of his medical condition on his lay-up slip. (*Id.* ¶¶ 28-29.) The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1:07-cv-01086-JBM-JAG  # 10    Page 16 of 19

Not Reported in F.Supp.2d                                                                                                        Page 2
Not Reported in F.Supp.2d, 1998 WL 704278 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

department filed additional charges against Brown when it learned of Brown's April 23, 1994 arrest, August 4, 1994 arrest, September 9, 1994 guilty pleas to retail theft charges, and the submission of two false notes to the department. (*Id.* ¶ 31-33.)

*2 On October 20, 1994, Brown's guilty pleas for the April 23, 1994 and August 4, 1994 theft charges were vacated with leave to reinstate. (*Id.* ¶ 37.) On November 3, 1994, the Director of the department's Internal Affairs Division Edward Altman recommended to Assistant Deputy Fire Commissioner Peter Soto ("Soto") that Brown be terminated. (*Id.* ¶ 38.) Soto reviewed all of the investigatory materials regarding Brown which included a video tape showing Brown in Carson, Pirie, Scott on August 4, 1994. (*Id.* ¶ 39.) Soto recommended to Deputy Fire Commissioner Patrick Kehoe ("Kehoe") that Brown be terminated. (*Id.* ¶ 41.) After Kehoe approved the discharge, Soto made the same recommendation to Fire Commissioner Raymond Orozco ("Orozco"). (*Id.* ¶ 43.) Orozco approved it and on January 10, 1995, Brown was terminated. (*Id.* ¶ 43, 45.)

Brown filed a claim (charge number 210951675) with the Equal Employment Opportunity Commission ("EEOC") on February 1, 1995 alleging that 1) he was discriminated against because he is black; 2) he was not convicted of theft; and 3) his employer treated similarly situated persons of a different race more favorably. (Def.Exh. N.)

The following facts, taken from Defendant's Rule 12(M) Statement and Plaintiff's Rule 12(N) Statement, are in dispute. Brown maintains that he received a copy of his Dismissal and Notice of Rights ("Right to Sue Letter") from the EEOC on June 6, 1996. (Pl. Resp. at 2.) The City maintains that Brown signed a statement dated February 20, 1996 that says, "I have received a Notice of Right to Sue in the above mentioned case." (Def. Rule 12(M) stmt. ¶ 68.)

On May 23, 1996, Brown filed a pro se complaint of employment discrimination. In his complaint, plaintiff alleged color and race discrimination under both Title VII and Section 1981. Thereafter, Brown applied for, and was granted, in forma pauperis status and filed through counsel, a First Amended Complaint under Title VII of the Civil Rights Act of 1964 asserting only a Title VII claim. Counsel subsequently was permitted to withdraw, and Brown chose to proceed pro se. Only the Title VII claim raised by the amended complaint is now before the court.

*Analysis*

Defendant City of Chicago moves the court to enter summary judgment on its behalf under Rule 56 of the Federal Rules of Civil Procedure. The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court will not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox,* 78 F.3d 322, 325 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton,* 77 F.3d at 171 (citation omitted); *Sullivan,* 78 F.3d at 325 (citation omitted).

*3 On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights,* 48 F.3d 234, 237 (7th Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Then the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 234 (7th Cir.1995) (citations omitted), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

These burdens are reflected in Rule 12 of the Local General Rules for the Northern District of Illinois. *Waldridge v. American Hoechst Corp.,* 24 F.3d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

918, 921-22 (7th Cir.1994). Under Rule 12(M)(3), the moving party must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. Under Rule 12(N)(3), the nonmoving party must submit a response to each such paragraph, including (in the case of disagreement) specific references to the factual record. [FN1] If the nonmoving party fails to disagree with a fact in the moving party's 12(M) statement, the court will deem that fact admitted. *See* Local Rule 12(N)(3). Similarly, if the nonmoving party disagrees with a fact in the moving party's statement but fails to support its disagreement with a specific reference to the factual record, the court may deem that fact admitted as well. Fed.R.Civ.P. 56(e); *Flaherty v. Gas Research Institute,* 31 F.3d 451, 453 (7th Cir.1994) (citations omitted). The Seventh Circuit Court of Appeals has "repeatedly upheld the strict enforcement of these rules." *Waldridge,* 24 F.3d at 922; *e.g., Knoblauch v. DEF Express Corp.,* 86 F.3d 684, 690 (7th Cir.1996).

> FN1. Rule 12(N)(3) further instructs the nonmoving party to submit a statement of any additional facts requiring denial of summary judgment, in the form of short numbered paragraphs supported by specific references to the factual record. In turn, Rule 12(M)(3) instructs the moving party to submit a concise reply to any such additional facts, including (in the case of disagreement) specific references to the factual record.

In addition to the above rules of law, the court is mindful that pro se complaints are to be liberally construed. *Chenh v. Logan,* 42 F.3d 1391, 1391 (7th Cir.1994). Complaints filed by lawyerless litigants, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). The liberal construction relates to both the pro se indigent plaintiff's factual allegations and its legal theories. *Neitzke v. Williams,* 490 U.S. 319, 330-31 n. 9, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The court must first determine whether plaintiff is barred under 42 U.S.C. § 2000e-5(f)(1) from bringing this Title VII claim. Under § 2000e-5(f)(1), the aggrieved employee must file suit within 90 days of the notification by the EEOC that it is unable or unwilling to settle the dispute between employee and employer.[FN2] *See Simmons v. Ill. Dept. of Mental Health and Developmental Disabilities,* 74 F.3d 1242 (7th Cir.1996); *see also Wilson v. Doctors Hosp. of Hyde Park,* 909 F.Supp. 580, 581 (N.D.Ill.1996). In this case, Brown received his right-to-sue letter from the EEOC on February 20, 1996 as evidenced by his signature on a receipt form dated February 20, 1996 that states "I have received a Notice of Right to Sue in the above mentioned case." (Def. Rule 12(M) stmt. ¶ 67-68.) Brown, however, filed his employment discrimination complaint on May 23, 1996, 93 days after his receipt of the right-to-sue notice. *Id.* Brown's untimely filing is in violation of the 90-day period allowed by 42 U.S.C. § 2000e-5(f)(1) and, therefore, his Title VII claim is time-barred.

> FN2. Section 2000e-5(f)(1) provides: "If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission ... the Commission shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved...."

*4 The court is mindful that the 90-day period of limitations in Title VII actions may be equitably tolled when circumstances warrant. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). However, equitable tolling is to be restricted and reserved only for situations in which claimant has made a good faith error or has been prevented in some extraordinary way from filing his complaint in time. *Wolfolk v. Rivera,* 729 F.2d 1114 (7th Cir.1984). Brown claims that he did not receive the right-to-sue notice until June 6, 1996. (Pl. Resp. at 2.) Despite this claim, Brown concedes in his deposition that the signature on the February 20, 1996 receipt form "appears to be his."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1998 WL 704278 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

(Def. Exh. A at 257.) In addition, Brown's complaint filed on May 23, 1996 alleges receipt of his Notice of Right to Sue. Brown fails to present any extraordinary reason for his delayed filing. Accordingly, defendant is entitled to summary judgment in its favor.

Even if Brown had filed his Title VII complaint within the statutory 90-day period, the court would still reach the same outcome because plaintiff has failed to set forth sufficient facts to establish a prima facie case of race discrimination. *See Greenslade v. Chicago Sun-Times, Inc.,* 112 F.3d 853, 863 (1997). To prevail under Title VII, Brown must prove he was a victim of intentional discrimination. *See Morgan v. Harris Trust and Savings Bank of Chicago,* 867 F.2d 1023, 1026 (7th Cir.1989) (per curiam). Brown must satisfy his burden of proof of race and color discrimination in one of two ways. He may present direct evidence that he was discharged for discriminatory reasons. *See e.g., Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Or Brown may rely on indirect evidence of discrimination, employing the three-step test articulated by the Supreme Court in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Brown offers no direct evidence that his discharge was discriminatory. Therefore, the court must analyze his claim under the *McDonnell-Douglas* framework.

To prove a Title VII violation under the *McDonnell-Douglas* method, the plaintiff must first establish a prima facie case of discrimination. The plaintiff must show that: 1) he is a member of a protected class; 2) his job performance was sufficient to meet his employer's legitimate expectations; 3) he was discharged; and 4) his employer treated similarly situated persons of a different race more favorably. *See Oates v. Discovery Zone,* 116 F.3d 1161, 1171 (7th Cir.1997); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997). Proof of all four elements creates a presumption of discrimination. *See Pafford v. Herman,* 148 F.3d 658, 665-66 (7th Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for the plaintiff's discharge. *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 445 (7th Cir.1997). If the defendant successfully presents such a reason, then the presumption of discrimination drops from the case and the plaintiff "must show that the defendants' proffered reason for the dismissal was false and only a pretext for discrimination," *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1290 (7th Cir.1997), "i.e., that race more likely motivated the employer." *Cowan,* 123 F.3d at 445. Throughout the burden-shifting framework, " 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dept. Of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

*5 Brown's discriminatory discharge claim fails on its face because he cannot prove all of the elements of a prima facie case. In particular, Brown cannot show that his job performance with the City was satisfactory. While he was employed by the City, Brown violated both the Code of Professional Conduct of the Chicago Fire Department and the City of Chicago Personnel Rules. Brown's violations of the rules, not his race or color, prompted his discharge.

According to the Code of Professional Conduct, " the following specific offenses shall be the subject of discipline up to and including discharge: ... 2.14 Conviction of any offense as set forth in the Illinois Revised Statutes or any federal statute." (Code of Professional Conduct of the Chicago Fire Department at 1; Def. Exh. J.)

In addition, Personnel Rule 15 states that "engaging in any act or conduct prohibited by the Municipal Code of the City of Chicago, the Illinois Compiled Statutes, applicable laws of other states, or federal statutes will result in disciplinary action which may include discharge." (Def. Ex. J, City of Chicago

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1998 WL 704278 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Personnel Rules at 41.) On August 8, 1994, Brown pled guilty to and was found guilty of misdemeanor retail theft for the incidents on April 23, 1994 and August 4, 1994.[FN3] (Def. Rule 12(M) stmt. ¶ 20.) Because he committed Code/Rule-prohibited offenses (misdemeanors) while he was a City employee, Brown cannot show that his job performance was satisfactory

> FN3. The court acknowledges that Brown's guilty pleas were vacated with leave to reinstate on October 20, 1994. (Pl. Rule 12(N) stmt. ¶ 37.)

Section 2.30 of the Code of Professional Conduct also mandates discipline or discharge for an employee who "mak[es] a false official report." (Def. Ex. J, Code of Professional Conduct of the Chicago Fire Department at 1.) The Personnel Rules similarly state that disciplinary action must be taken against those who "mak[e] false, inaccurate or deliberately incomplete statements in an official inquiry, investigation or other official proceeding." (Def. Ex. J, Personnel Rules at 41.) On August 5, 1994, Brown's wife submitted a false illness report to the fire department while Brown was in the custody of the police department following his August 4, 1994 arrest. (Def. Exh, A at 170-76.) In addition, Brown, himself, submitted a false statement to the department claiming that he was unable to be reached at home between August 5-9, 1994 because he was going to and from the drug store and doctor visits (although he was in police custody). (Def.Exh. J.)

Given his numerous violations of the Code of Professional Conduct and the Personnel Rules, Brown cannot show that he sufficiently performed his job duties, a necessary element to sustain a prima facie case of employment discrimination. Therefore, the court finds that plaintiff has failed to establish a prima facie case. Accordingly, the court concludes that plaintiff has not set forth sufficient facts to withstand defendant's motion for summary judgment.

*Conclusion*

For the foregoing reasons, the court grants defendant's motion for summary judgment. Accordingly, the court denies plaintiff's motions for enlargement of time to respond to defendant's motion for summary judgment [73-1], to re-open discovery [75-1], and to attach exhibits as moot.

N.D.Ill.,1998.
Brown v. City of Chicago
Not Reported in F.Supp.2d, 1998 WL 704278 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.